UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| R.W. TAYLOR ASSOCIATES, INC. et al., | ) ) ) | CASE NO. 5:10CV256 |
| Plaintiff, | ) ) | JUDGE DAVID D. DOWD, JR. Magistrate Judge George J. Limbert |
| v. | ) ) | |
| GELRAD, LLC., | ) ) | INTERIM REPORT AND RECOMMENDATION OF |
| Defendant. | ) ) | MAGISTRATE JUDGE |

The above case is before the undersigned[1] on Plaintiff Richard W. Taylor, Ph.D ("Plaintiff Taylor") and Plaintiff R.W. Taylor Associates, Inc.'s ("Plaintiff Taylor Associates")(collectively "Plaintiffs") motion for a preliminary injunction. ECF Dkt. #10. Based upon the hearing before the undersigned and the briefs submitted by the parties, the undersigned recommends that the Court DENY Plaintiffs' motion for a preliminary injunction. *Id.*

**I.** **JURISDICTION**

Plaintiff Taylor is an individual residing in Ohio, and Plaintiff Taylor Associates is an Ohio corporation whose president is Plaintiff Taylor. ECF Dkt. #14 at 1. Defendant Gelrad ("Defendant") is a Connecticut limited liability company with a principal place of business in New

---

[1] On February 10, 2010, the Honorable Judge Dowd, Jr. referred this case to the undersigned for general pretrial supervision. *See* Docket Text for February 10, 2010.

1

York. ECF Dkt. #15 at 1. In accordance with *V&M Star, LP v. Centimark Corp.*, 596 F.3d 354 (6th Cir. 2009), the undersigned ordered Defendant to submit an affidavit declaring its structure as it existed at the time this suit was filed, as well as the citizenship of its members and sub-members, if Defendant was an LLC at that time. ECF Dkt. #16. Defendant submitted an affidavit declaring that Defendant is a Connecticut Limited Liability Company, whose members are: Elaine Kowansky, President and CEO, a resident of New York State at the time that this matter commenced, and Ram Josyula, a resident of New York State at the time that this matter commenced.

Upon review of Defendant's affidavit, the undersigned is satisfied that diversity jurisdiction exists in this case.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

Defendant is a consulting firm that uses Six Sigma methodologies to help companies increase their process efficiency and effectiveness. ECF Dkt. #14 at 1. Defendant provides its consulting services to companies through two employees and individuals who enter into independent contractor agreements with it. *Id.* at 1-2. Elaine Kowansky is the CEO and President of Defendant. *Id.* at 2. Plaintiff Taylor provides Six Sigma consulting services through his company, Plaintiff Taylor Associates. Transcript of 3/11/2010 Preliminary Injunction Evidentiary Hearing ("Tr.) at 1-3.

On September 15, 2005, Plaintiffs and Defendant entered into an independent contractor agreement ("2005 Agreement") for Plaintiffs to provide consulting services to Defendant's clients. Defendant's Exhibit A. The 2005 Agreement identified the parties as Defendant, who was referred to throughout the Agreement as "The Company," and "Dr. Richard Taylor, doing business as R.W. Taylor Associates, Inc.", who was referred to throughout the Agreement as "The Contractor." *Id.* The 2005 Agreement, among other provisions, contained a "Conflict of Interest" provision which

provided in relevant part that "the Contractor will not work in any capacity with The Company's clients during the term of this agreement and for a year after termination of the services provided by the Contractor without the written permission from The Company." *Id.*

Upon executing the 2005 Agreement, Defendant offered Plaintiffs the opportunity to provide consulting services to one of its clients, BP. ECF Dkt. #13 at 2; ECF Dkt. #15 at 5. Defendant had undertaken efforts to develop a trusted business relationship with BP since 2003 and considered BP a prized client. Tr. at 79-80. Plaintiffs had never worked with BP prior to entering the 2005 Agreement with Defendant. Tr. at 25. Once Plaintiffs began providing services to BP through Defendant, Plaintiffs' work was almost exclusively with BP. *Id.* at 7-8.

On February 29, 2008, Plaintiff Taylor executed a contract with BP Exploration (Alaska), Inc. on behalf of Plaintiff Taylor Associates to provide consulting services directly from Plaintiff Taylor Associates to BP Exploration (Alaska), Inc. from January 1, 2008 to June 30, 2008. Defendant's Exhibit E. BP Exploration (Alaska), Inc. signed the contract on March 12, 2008. *Id.*

On June 2, 2008, Plaintiffs attempted to renegotiate the 2005 Agreement with Defendant. Defendant's Exhibit J. In their proposed contract, Plaintiffs indicated that they wanted to negotiate direct work with BP and wanted "the forward-going relationship to cover activities whether I am doing project work for Gelrad or Gelrad folks are doing work for RWTA [Plaintiff Taylor Associates]; i.e., perhaps more of a 'sister' relationship." *Id.* Plaintiff Taylor testified that Defendant "orally agreed" to his proposed contract, but Ms. Kowansky denied doing so, testifying that if amendments were made to any contract, they had to be in writing. *Id.* at 8, 88.

On July 27, 2008, Plaintiff Taylor executed an extension of the direct contract between Plaintiff Taylor Associates and BP Exploration (Alaska), Inc. from June 30, 2008 to December 31,

2009. Defendant's Exhibit E. On November 17, 2008, Dr. Taylor entered into another direct contract with BP, BP America Production Company, on behalf of Plaintiff Taylor Associates. Defendant's Exhibit F; Tr. at 36-37.

On December 3, 2008, Plaintiffs gave written notice to Ms. Kowansky through an e-mail that they were terminating their relationship with Defendant. Defendant's Exhibit M. On December 13, 2008, Plaintiff Taylor e-mailed Ms. Kowansky regarding the resignation and stated that Defendant could still give him permission to work directly with BP, since the 2005 Agreement allowed Defendant to give written permission to Plaintiffs to work with Defendant's clients both during the term of the agreement and during the one-year period after termination of the agreement despite the non-compete clause. Defendant's Exhibits A, N. Plaintiff Taylor testified that when he tendered resignation on behalf of Plaintiffs, Defendant told him that they were expected to abide by the one-year non-compete provision. Tr. at 40. He also acknowledged that written permission was required by Defendant in order for Plaintiffs to work directly with BP. *Id*. at 42-43.

On January 11, 2009, Defendant and "R.W. Taylor Associates, Inc." entered into an "Amendment and Restatement of Independent Contractor Agreement Originally Dated November 15, 2005."("2009 Agreement"). Defendant's Exhibit B. The 2009 Agreement became effective January 7, 2009 and identified Defendant as the "Company" and Plaintiff Taylor Associates as the "Contractor." *Id*. The "Conflict of Interest" provision contained the same one-year non-compete language as the 2005 Agreement, except that it provided that the "Contractor and Dr. Taylor" would not work in any capacity with Defendant's clients during the 2009 Agreement or for one year after the termination of services. *Id*. at 2. The "Conflict of Interest" provision in the 2009 Agreement also contained a "for cause" termination clause:

4

The Company may only terminate the Contractor "for cause."  In the event the Company terminates the Contractor without cause, restrictions as to the one-year waiting period shall not apply.  "For cause" means:

(i)      an intentional act of fraud, embezzlement, theft or other material violation of law;

(ii)     conviction of a crime involving moral turpitude;

(iii)    intentional damages to assets of the Company;

(iv)    intentional disclosure of Company's confidential information contrary to Company's policies set forth above;

(v)     material breach of Contractor's obligations under this Agreement;

(vi)    intentional engagement in any competitive activity which would constitute a breach of Contractor's duty of loyalty or obligations under this Agreement;

(vii)   the continued failure to substantially perform Contractor's duties to the Company;

(viii)  willful conduct by Contractor that is demonstrably and materially injurious to the Company, monetarily or otherwise; and

(ix)    physical incapacity or medical disability of Contractor.

*Id.*

On October 23 2009, Plaintiff Taylor sent Ms. Kowansky an e-mail relating to severing the parties' relationship.  Defendant's Exhibit P.  He noted that "the current contract...requests a non-compete for twelve months following termination." *Id*.  Plaintiff Taylor indicated his desire to work directly with BP on a partial basis within the month following termination of the parties' relationship. *Id.*  He proposed a financial wind-down whereby he would continue working for BP under the existing pay division until the end of 2009, and Defendant would release him to continue his own independent work and allow him to work directly with BP. *Id*.  Plaintiff Taylor indicated that "[a]fterwards, the majority of the work that I will be doing at BP is not work in which Gelrad had previously engaged, nor is it work that Gelrad would likely be providing without my expertise,

so there hardly seems to be any non-compete in these areas." *Id.* Plaintiff Taylor concluded the e-mail by stating that "[a]s I stated on the phone, my preference would be to reach some concessionary arrangement, signed by both parties, prior to pursuing litigious avenues." *Id.*

On November 3, 2009, Ms. Kowansky responded, rejecting Plaintiffs' proposal on behalf of Defendant and stating Defendant's expectation that Plaintiffs continue under the 2009 Agreement or Defendant would enforce its terms if necessary. Defendant's Exhibit Q.

On November 10, 2009, Plaintiffs filed a complaint for a declaratory judgment regarding the enforceability of the non-compete provision of the 2009 Agreement in the Summit County Court of Common Pleas. ECF Dkt. #1-1. Plaintiffs sought a Court determination that paragraph 3 was unreasonable under Connecticut law and unenforceable because Defendant had no legitimate business interest in enforcing the agreement. *Id.*

On December 11, 2009, Defendant, through Ms. Kowansky, sent Plaintiffs a letter terminating the 2009 Agreement. ECF Dkt. #10-4. In the letter, Defendant cited paragraph 3(v), (vi), (vii), and (viii) of the 2009 Agreement and outlined ten acts that it determined constituted "for cause" termination as defined in the 2009 Agreement. *Id.* Defendant further indicated in the letter that BP had been advised of Plaintiffs' obligations under the 2009 Agreement and Defendant would defend its rights under that Agreement, including seeking an injunction to prevent Plaintiffs from working with BP during the next twelve months. *Id.*

On February 4, 2010, Plaintiffs filed an amended complaint in the Summit County Common Pleas Court, still requesting a declaratory judgment, but also bringing claims against Defendant for breach of contract, tortious interference with a business relationship and wrongful termination. ECF Dkt. #6. Plaintiffs averred that they performed all of their obligations under the 2009 Agreement and continued to perform despite attempts to amend the agreement since Defendant was unwilling to

6

renegotiate the terms of the non-compete provision and sought to enforce the agreement. Plaintiffs averred that Defendant's reasons for terminating them "for cause" as defined in the agreement were untrue and insufficient. ECF Dkt. #1 at 3. They further assert that Defendant has caused BP not to hire Plaintiffs due to the alleged contractual issues regarding the non-compete provision. *Id.*

On February 4, 2010, Defendant removed Plaintiffs' amended complaint to this Court and on February 17, 2010, filed an answer to the amended complaint and asserted counterclaims. ECF Dkt. #8 at 4. Defendant averred that it has had significant success in building strong client relationships with major corporations, including BP, since its inception in 2000. *Id.* Defendant indicated that it has spent great effort and expense to develop its extensive business relationship with BP. *Id.* at 5. Defendant further averred that it signed the 2005 Agreement with Plaintiffs and thereafter offered them an opportunity to work with BP to help with BP's Indirect Procurement Department. ECF Dkt. #8 at 5. Defendant averred that due to its efforts, Plaintiffs were assigned consulting work for another division of BP, the Exploration and Production and Safety and Operations organizations. *Id.* Defendant stated that Plaintiffs have been paid approximately $2 million for their services and expenses from September 2005 through October 2009 while working as its independent contractor. *Id.*

Defendant further stated that the parties entered into the 2009 Agreement and highlighted the confidentiality provision and paragraph 3, which provided that Plaintiffs could perform services for other parties, so long as those services did not conflict with Defendant's interests. ECF Dkt. #8 at 5-6. Defendant indicated that Plaintiffs had also agreed that they would "not work in any capacity with [GELRAD's] clients during the term of [the] Agreement and for one (1) year after termination of services provided by the [Plaintiffs] without written permissions of [GELRAD]." *Id.*

Defendant further averred that Plaintiffs had voluntarily entered into a valid and binding contract and Defendant performed all of its obligations under the contract. ECF Dkt. #8 at 8. Defendant asserted that Plaintiffs unjustifiably and inexcusably threatened to breach sections 2 and 3 of the agreement by engaging in competition with Defendant, soliciting BP, and planning to compete with Defendant by working with BP during the one-year period following termination of Plaintiffs' independent contractor agreement with Defendant. *Id.* Defendant further asserted that Plaintiffs breached the contract by directly or indirectly using or disclosing information that Defendant had developed at its own expense. *Id.* Defendant alleged that due to the anticipatory repudiation and breach of the contract, it had been damaged and would suffer irreparable harm unless Plaintiffs were enjoined from soliciting Defendant's clients, competing with Defendant in violation of the agreement, and using or disclosing its clients' confidential information. *Id.*

Defendant further asserted claims of interference with Defendant's business relationships with BP, tortious interference with Defendant's business relationships, Plaintiffs' breach of fiduciary and common law duties and good faith obligations. ECF Dkt. #8 at 10. Defendant also requested that the Court declare the parties' agreement valid and fully enforceable and specifically declare that the 12-month non-compete period provision in the agreement with Plaintiffs is reasonable in scope and duration. *Id.* at 11. Defendant requested that the Court dismiss Plaintiffs' claims in their entirety and preliminarily and permanently enjoin Plaintiffs from: directly or indirectly engaging in acts in violation of the contract; tortiously interfering with the contract obligations of current or former independent contractors of Defendant; and disclosing Defendant's confidential or proprietary information. *Id.* Defendant also requested that the Court order Plaintiffs to return all of its documents and tangible items, pay Defendant money damages if Plaintiffs engaged in conduct for

8

which money damages can be calculated and awarded, and pay Defendant's costs and attorney fees. *Id*. at 11-12.

On February 25, 2010, Plaintiffs filed an answer to Defendant's counterclaim. ECF Dkt. #9. They also filed the instant motion for a preliminary injunction. ECF Dkt. #10. Defendant filed a response to the motion for a preliminary injunction on March 10, 2010. ECF Dkt. #13.

On March 11, 2010, the undersigned held an evidentiary hearing on Plaintiffs' motion for a preliminary injunction with Plaintiffs and their counsel, Attorney John Childs, and Defendant and its counsel Attorney Charles H. Cooper, Jr., in attendance. Both parties called witnesses at the hearing. The witnesses included Plaintiff Taylor and Elaine Kowansky. The undersigned also accepted exhibits submitted by both parties. Each party also submitted proposed findings of fact and conclusions of law after the hearing. ECF Dkt. #s 14, 15.

## III. CHOICE OF LAW ANALYSIS

### A. CONTRACT CLAIMS

The undersigned notes that this Court's jurisdiction over the case is based upon diversity jurisdiction. Thus, the Court must determine which state's laws to apply in considering the substantive claims of the parties. *Extracorporeal Alliance, L.L.C. v. Rosteck*, 285 F.Supp.2d 1028, 1036 (N.D. Ohio 2003). A federal court sitting in diversity must apply the choice-of-law rules of the forum state. *National Mut. Fire. Ins. Co. v. General Motors Corp.*, 415 F.Supp.2d 769, 774-775 (N.D. Ohio 2006), citing *Klaxon Co. v. Stentor Elec. Manufacturing Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) and *Tele-Save Merch. Co. v. Consumers Distrib. Co.*, 814 F.2d 1120, 1122 (6th Cir. 1987). Accordingly, the Court should apply Ohio's choice-of-law rules.

Here, all of Plaintiffs' and Defendant's claims emanate from the interpretation of either or both of the agreements entered into by the parties: the 2005 Agreement and/or the 2009 Agreement.

Ohio law directs that, with some exceptions, courts apply the law of the state that the parties to a contract have chosen in order to govern their rights and duties. *Rosteck,* 285 F.Supp.2d at 1036, citing *Schulke Radio Productions, Ltd. v. Midwestern Broadcasting Co.*, 6 Ohio St.3d 436, 438, 453 N.E.2d 683, citing Restatement of Law 2d, Conflict of Laws § 187 and *Ohayon v. Safeco Ins. Co. of Illinois*, 91 Ohio St.3d 474, 477, 747 N.E.2d 206 (2001). The Court should not apply the chosen state law when that state has no substantial relationship to the parties or the transaction and no other reasonable basis exists for the choice, or when application of the chosen law would be contrary to the fundamental policy of the state that has a greater material interest in the issue than the chosen state and that state would be the state of applicable law if the parties had not chosen a state in the contract. *Schulke Radio Productions*, 6 Ohio St. 3d at 438-439.

Both the 2005 and the January 2009 Agreements contain provisions stating that Connecticut state law governs the validity of the Agreements. Defendant's Exhibits A and B from 3/11/10 Evidentiary Hearing on Motion for Preliminary Injunction ("Defendant's Exhibit"); ECF Dkt. #10-1 at 5. Both parties signed these Agreements containing this narrowly tailored choice of law provision which governs only the Agreements' validity.

Plaintiffs state that "it is undisputed that a valid contract existed" between the parties. ECF Dkt. #10 at 5; ECF Dkt. #15 at 8. However, Defendant raises Plaintiffs' fraudulent inducement[2] of

---

[2] The undersigned notes that while Defendant raised fraudulent inducement in its proposed findings of fact and conclusions of law and through Ms. Kowansky's testimony before the undersigned, Defendant failed to raise fraud as an affirmative defense in its amended answer. Rather, Defendant asserted Plaintiffs' "unclean hands" as its only affirmative defense as a bar to injunctive relief. ECF Dkt. #8 at 4. In explaining what was meant by "unclean hands," Defendant indicated in its proposed findings of fact and conclusions of law that Plaintiffs admitted contracting directly with BP in 2008 when the contract with Defendant prohibited them from doing so. ECF Dkt. #14 at 11.

Despite Defendant's failure to raise fraud as an affirmative defense in its amended answer, the undersigned recommends that the Court find that Defendant has not waived its right to raise this defense. Rule 8(c)(1) of the Federal Rules of Civil Procedure does state that a party must affirmatively state the defense of fraud in responding to a pleading. Fed. R. Civ. P. 8(c)(1). However, the failure to raise fraudulent inducement as an affirmative defense in a responsive pleading does not always result in waiver, so long as the opposing party receives notice of the defense by some other means at a "pragmatically sufficient time" and the opposing party is not prejudiced in its ability to respond. *Moore, Owen, Thomas*

Defendant into entering the 2009 Agreement in its proposed findings of fact and conclusions of law. ECF Dkt. #14 at 16. Further, Ms. Kowansky testified at the evidentiary hearing that Plaintiff did not disclose his 2008 direct contracts with BP while working with Defendant and had she known of these contracts, she would not have agreed to Plaintiffs' request to renegotiate their contract which resulted in the 2009 Agreement and she would have terminated the 2005 Agreement and not rehired Plaintiffs. ECF Dkt. #14 at 16; Tr. of 3/11/2010 Prelim. Inj. Hearing ("Tr.") at 92-93.

Despite raising the issue of fraudulent inducement, Defendant states in its findings of fact and conclusions of law that the Court need not reach that issue because Plaintiffs cannot otherwise meet their burden of showing that Defendant breached the 2009 Agreement. ECF Dkt. #14 at 16. Defendant also contrarily asserts both in its findings of fact and in its response to the motion for a preliminary injunction that no dispute exists as to the validity of the 2009 Agreement in discussing whether the non-compete provision of that agreement is enforceable under Connecticut and Ohio law. ECF Dkt. #13 at 11; ECF Dkt. #14 at 19.

Despite the contradictory assertions, Defendant has put the issue of the validity of the 2009 Agreement into question. Accordingly, the undersigned recommends that the Court apply Connecticut law in order to determine the validity of that agreement. However, if the Court accepts Defendant's statement that the Court not reach the issue of fraudulent inducement, then Ohio's choice of law rules require the Court to apply the laws of the state with the most significant relationship to the contract. *Ohayon*, 91 Ohio St.3d at 477-478; *International Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 604 (6th Cir. 1996). In determining this issue, Ohio has adopted the test set

---

*& Co. v. Coffey*, 992 F.2d 1439, 1445 (6th Cir. 1993), citing cases. Here, Defendant raised fraudulent inducement at a sufficient time in its proposed findings of fact and conclusions of law and through Ms. Kowansky's testimony, and to some extent, through its assertion of "unclean hands."

forth in the Restatement (Second) of Conflict of Laws § 188 (1971)("§188")[3]. *Gries Sports Ent., Inc. v. Modell*, 15 Ohio St.3d 284, 284, 473 N.E.2d 807 (1984); *Rosteck*, 285 F.Supp.2d at 1036. In reviewing the factors from §188 and §6, they provide little aid in determining the state with the most

---

[3] Section 188 provides, in relevant part:

> (1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

> (2) In the absence of an effective choice of law by the parties ... the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

>> (a) the place of contracting,
>> (b) the place of negotiation of the contract,
>> (c) the place of performance,
>> (d) the location of the subject matter of the contract, and
>> (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

Restatement (Second) of Conflict of Laws § 188. Section 6 of the Restatement provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include:

>> (a) the needs of the interstate and international systems,
>> (b) the relevant policies of the forum,
>> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>> (d) the protection of justified expectations,
>> (e) the basic policies underlying the particular field of law,
>> (f) certainty, predictability and uniformity of result, and
>> (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6.
    Plaintiffs aver in their amended complaint that Plaintiff Taylor Associates is an Ohio corporation and they signed the contract with Defendant in Ohio, performed services in Ohio and other places, and have never been to Defendant's corporate offices or conducted business for Defendant in New York, where Defendant's principal place of business is located. ECF Dkt. #6 at 1. Defendant does not dispute Plaintiffs' Ohio incorporation, the signing of the contract in Ohio, the performance of services in Ohio and other locations, and Defendant admits that Plaintiffs have never been physically present in its corporate offices in New York. ECF Dkt. #8 at 1. The Court could determine that Ohio is the place where the most significant relationship exists. *See also Spengler v. ADT Sec. Servs.*, Inc., 505 F.3d 456, 457 (6th Cir. 2007), citing Restatement (Second) of Conflict of Laws, § 188(2) (1971)(the place of contracting, performance, and subject matter of the contract was in Ohio and therefore, Ohio law applies). However, the place of performance and subject matter of the contract did not take place solely in Ohio, so the undersigned questions the utility of the Restatement sections.

substantial relationship. Since the parties agree that either Ohio or Connecticut law applies and the law is similar in both states, the undersigned will cite to the laws of both states in considering the substantial likelihood of Plaintiffs prevailing on their contract claims for preliminary injunction purposes only. However, this issue will need to be resolved and the Court will need to determine with certainty which state's laws apply prior to final adjudication of the merits of this case.

### B. TORT CLAIM

Plaintiffs have failed to address why Ohio or Connecticut law applies to their tortious interference claim. Both Defendant and Plaintiffs apply Ohio and Connecticut law to this claim. Sitting in diversity, this Court applies the law of the state it which it sits, which is Ohio law. Ohio law applies Section 145 of the Restatement (Second) of Conflict of Laws ("§ 145") to determine that the rights and liabilities of the parties regarding a tort issue are determined by the state which has the most significant relationship to the occurrence and sets forth factors to consider in determining the most significant relationship. Restatement (Second) of Conflict of Laws § 145.

Here, neither party discusses § 145 and its applicability to this claim. The undersigned believes that a number of states could potentially be involved, some known to the Court and some not known. For instance, Plaintiff Taylor resides in Ohio and Plaintiff Taylor Associates is an Ohio corporation. ECF Dkt. #6 at 1. Defendant is a Connecticut limited liability company with its principal place of business in New York. ECF Dkt. #8 at 2. Further, the e-mail from Ms. Kowansky to various individuals at BP that Plaintiffs state resulted in the tortious interference with its business relationship was written from Defendant's e-mail, presumably in New York. However, the Court is unaware of the locations of where the various BP officials and representatives were located. Thus, the state with the most significant relationship to the alleged tort is difficult to determine[4] and neither

---

[4] Section 145 provides four factors to consider in determining the most significant relationship:
      (a)      the place where the injury occurred,

party addresses this issue. While the lack of information in this case and § 145 provide little aid in determining the appropriate state law in which to apply, the undersigned will apply the general elements for a tortious interference with business claim. *See* § VA(3), *infra* (discussing the general elements).

For these reasons, the undersigned will address Connecticut law with respect to the fraudulent inducement issue, Connecticut and Ohio law with respect to the contract claims, and the general law regarding tortious interference with a business relationship to Plaintiffs' tort claim.

## IV. STANDARD OF REVIEW

Plaintiffs request that the Court issue a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure in order to enjoin Defendant from "(1) directly or indirectly preventing Plaintiffs from working for BP, and (2) tortiously interfering with the business relationship between Plaintiffs and BP." ECF Dkt. #10.

---

(b)      the place where the conduct causing the injury occurred,
(c)      the domicil, residence, nationality, place of incorporation and place of business of the parties, and
(d)      the place where the relationship, if any, between the parties is centered.

Restatement (Second) of Conflict of Laws § 145. That section further provides that the principles of §6 of the Restatement (Second) of Conflict of Laws must be taken into account in determining the law applicable to an issue as well. *Id.*; *see supra.*

Here, the factors of § 145 and § 6 provide little aid in determining the appropriate state law to apply. The alleged economic injury to Plaintiffs presumably occurred in states other than Ohio, although Plaintiffs reside in Ohio, since Plaintiffs allege lost employment opportunities at BP, a company with operations spanning across 29 countries. ECF Dkt. #10-2, Exhibit B. Further, the location of the alleged conduct causing the injury is also difficult to determine since Plaintiffs allege the conduct was Defendant notifying BP of its intent to enforce the non-compete provision against Plaintiffs when the non-compete was unenforceable. ECF Dkt. #10 at 8-9. Defendant sent BP an e-mail regarding the non-compete provision from Defendant's e-mail account and sent it to a number of individuals at BP. Plaintiffs' Exhibit 13 from 3/11/10 Evidentiary Hearing on Motion for Preliminary Injunction ("Plaintiffs' Exhibit"). The locations of each of the individuals who received this e-mail is not provided, nor is Ms. Kowansky's e-mail location. As far as domicil, residence and incorporation are concerned, Plaintiff Taylor is an Ohio resident and his corporation is located in Ohio as well. Tr. at 4; ECF Dkt. #6 at 1. Defendant is a Connecticut limited liability company with its principal place of business located in New York. ECF Dkt. #8 at 4. Further, the location where the relationship is centered is also a difficult issue since Plaintiffs have never been physically present in Defendant's corporate offices in New York, Defendant has never been physically present or performed work in Ohio and Plaintiffs performed services for Defendant in different locations. ECF Dkt. #8 at 1 and 5.

In determining whether to issue a preliminary injunction, the Court must consider the following factors:

1. whether the movant has shown a strong or substantial likelihood or probability of success on the merits;

2. whether the movant has shown irreparable injury;

3. whether the issuance of a preliminary injunction would cause substantial harm to others;

4. whether the public interest would be served by issuing a preliminary injunction.

*Mason County Medical Assoc. v. Knebel*, 563 F.2d 256, 261 (6th Cir. 1977)(citations omitted). No single factor in this test is determinative and the Court must weigh each factor in light of the circumstances of the case. *See Roth v. Bank of the Commonwealth*, 583 F.2d 527, 537-538 (6th Cir. 1978), *cert. dismissed*, 442 U.S. 925 (1979). However, "a plaintiff must always demonstrate some irreparable injury before a preliminary injunction may issue." *Friendship Materials, Inc. v. Michigan Brick, Inc.*, 679 F.2d 100, 104 (6th Cir. 1982).

Since no single preliminary injunction factor is determinative, the undersigned shall address each of the four factors separately.

## V.     LAW AND ANALYSIS

### A.     SUCCESS ON THE MERITS

This factor involves a determination as to whether Plaintiffs have shown a strong or substantial likelihood or probability of success on the merits of their case. *See Knebel*, 563 F.2d at 261. A party need not prove its case in full in order to establish success on the merits for preliminary injunction purposes, but it must show more than a mere possibility of success. *Six Clinics Holding Corp. v. Cafcomp Sys., Inc*., 119 F.3d 393, 402 (6th Cir. 1997). "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to

15

make them a fair ground for litigation and thus for more deliberate investigation." *Id.*, citing *In re DeLorean Motor Co.*, 755 F.2d 1223, 1229 (6th Cir. 1985).

## 1. PLAINTIFF TAYLOR'S CLAIMS AGAINST DEFENDANT

The undersigned questions whether Plaintiff Taylor can raise individual claims against Defendant based upon either the 2005 Agreement or the 2009 Agreement. The parties to the 2005 Agreement are Defendant and "Dr. Richard Taylor, doing business as R.W. Taylor Associates, Inc." Defendant's Exhibit A. That agreement indicates that it is "by and between" Defendant and only Plaintiff Taylor Associates. Defendant's Exhibit B. Plaintiff Taylor is not listed as a party to the agreement and Plaintiff Taylor signed the agreement as President of Plaintiff Taylor Associates and not in an individual capacity.

Further, the 2009 Agreement indicates that it is an "Amendment and Restatement" of the 2005 Agreement between the parties. However, the 2009 Agreement is between Defendant and R.W. Taylor Associates, Inc." and Dr. Taylor is not a party to the 2009 Agreement. Dr. Taylor also signed this agreement as President of Plaintiff Taylor Associates.

Accordingly, issues are raised as to whether Plaintiff Taylor can bring claims as an individual against Defendant when he is not a party to either the 2005 Agreement or the 2009 Agreement. Nevertheless, the undersigned will refer to both Plaintiff Taylor and Plaintiff Taylor Associates, Inc. as Plaintiffs throughout this Report and Recommendation should the Court find that Dr. Taylor can indeed bring such claims.

## 2. PLAINTIFFS' BREACH OF CONTRACT CLAIM

Plaintiffs assert that they can show a strong likelihood of success on the merits of their breach of contract claim because the 2009 Agreement between the parties was a valid contract, they performed under the agreement and they did not engage in conduct constituting "for cause"

termination. ECF Dkt. #10 at 4-5. They further assert that Defendant breached the agreement by wrongfully terminating them and seeking to enforce the non-compete clause even though no "for cause" reasons existed for the termination, and Plaintiffs suffered monetary and other incalculable damage to their relationship with BP as a result. *Id*. at 5.

### a. <u>FRAUDULENT INDUCEMENT</u>

The first issue that the Court must address is which contract between the parties controls. While Plaintiffs allege Defendant's breach of the 2009 Agreement, Defendant has presented an issue regarding Plaintiffs' fraudulent inducement of Defendant into entering that agreement. The undersigned believes that Defendant has a meritorious defense to the validity of the 2009 Agreement and the 2005 Agreement did not require "cause" for termination. Therefore, Plaintiffs have not demonstrated a strong likelihood of success on the merits of their claims.

As mentioned above, in determining the validity of the 2009 Agreement, Connecticut law applies to determine if Defendant was fraudulently induced. The elements of fraudulent inducement based upon non-disclosure under Connecticut law are: "1) failure to disclose a fact; 2) the duty to disclose that fact; 3) intent to induce reliance; 4) the reliance upon the non-disclosure was reasonable." *Topf v. Warnaco, Inc.*, 942 F.Supp. 762, 769 (D.Conn. 1996), citing *Duksa v. City of Middletown*, 173 Conn. 124, 127, 376 A.2d 1099, 1101 (1977) and *Petrone v. Melnick*, No. CV89 0042882S, 1994 WL 228252, at *1 (Conn.Super. May 19, 1994).

Here, Defendant asserts that Plaintiffs failed to disclose the fact that they secretly signed direct contracts with BP in 2008 and Defendant would have terminated its relationship and not renegotiated for the 2009 Agreement with Plaintiffs had they disclosed those direct contracts. ECF Dkt. #14 at 15. Ms. Kowansky testified as much in the hearing before the undersigned. Tr. at 92-93. Defendant asserts that "[a]s a result, GELRAD would not have entered into the January 2009 'for

cause' contract requested by Taylor, i.e., GELRAD would not have needed 'cause' to end its relationship with Plaintiffs. Because plaintiff's breach-of-contract claim turns on the existence of 'cause' under the January 2009 agreement, the claim would necessarily fail if that contract is not the operative contract for purposes of determining the validity of the termination." ECF Dkt. #14 at 15. Defendant goes on to assert that "Taylor's renegotiation of the Agreement without informing GELRAD of his side deals with BP was an effort to fraudulently induce GELRAD to modify the Agreement and there is a serious question as to whether the Amended Agreement ever superseded the initial Agreement under those circumstances." *Id*. at 16.

The testimony and evidence presented at the hearing on the motion for preliminary injunction confirm that Plaintiff Taylor entered into two direct contracts with BP on behalf of himself and Plaintiff Taylor Associates even though he understood that both the 2005 Agreement and the 2009 Agreement contained the provision that Plaintiff would not work in any capacity for BP directly unless he first obtained the written permission of Defendant. Tr. at 28-29, 32, 36-37. The first contract with BP was signed by Plaintiff, as President of and on behalf of Plaintiff Taylor Associates, on February 29, 2008, and a BP representative signed the agreement on March 12, 2008. *Id.* at 29. Plaintiff testified that Defendant did not authorize him to enter into this contract on its behalf, and he never informed Defendant of this contract until just prior to depositions for the lawsuit in this case. *Id.* at 30, 37. Shortly after signing this contract with BP, Plaintiff Taylor testified that he attempted to renegotiate the 2005 Agreement with Defendant, under which the parties were still operating. *Id*. at 32. Plaintiff Taylor further testified that he signed an extension of his agreement with BP in July 2008 on behalf of his company, Plaintiff Taylor Associates *Id*. at 33. This extension was through December 31, 2009. *Id*. at 34. Plaintiff Taylor indicated that at the time of the signing of this extension, Plaintiffs were still Defendant's independent contractor and were still operating

under the original 2005 Agreement with Defendant. *Id.* And while he testified that he believed that Ms. Kowansky knew of the second contract that Plaintiffs entered into directly with BP in November 2008, he indicated that Plaintiffs were still Defendant's independent contractor and were still operating under the 2005 Agreement that they had with Defendant. *Id.* at 37.

Plaintiff Taylor also affirmed the following statement by Attorney Cooper:

> Q: Okay. And while you were negotiating for a for cause provision that might allow you to avoid the one-year noncompete, you knew something that you hadn't disclosed to GELRAD, true? Let me be more specific: You knew that you had already negotiated two different agreements with BP without including GELRAD, right?
>
> A: Yes.

Tr. at 51. Ms. Kowansky testified to the following upon questioning by Attorney Cooper:

> Q: Ms. Kowansky, did GELRAD ever, in any way, agree to allow Dr. Taylor to negotiate side deals with BP?
>
> A: No.
>
> Q: Have you ever allowed any consultant, any GELRAD contractor or consultant to do that?
>
> A: No.
>
> Q: If you had known - - -well, let me back up.
> When did you learn that Dr. Taylor had negotiated side agreements with BP?
>
> A: I learned that last week after I finished my deposition.
>
> Q: And if you had known that at the time the events were occurring, say in February 2008 and thereafter, what would GELRAD have done?
>
> > MR. CHILDS: Object.
> >
> > THE COURT: I will overrule the objection. Go ahead.
>
> THE WITNESS:
>
> > I mean, I would have terminated his contract. He was, you know, breaching - - - I would have terminated his consulting agreement and believed that he was

19

breathing the contract.

BY MR. COOPER:

Q:     If GELRAD had known in January 2009 about these side agreements that Dr. Taylor had signed with BP, would GELRAD have entered into the amended independent contractor agreement?

MR. CHILDS:     Object.

THE WITNESS:     Absolutely not.

THE COURT:     I will overrule the objection.

THE WITNESS:     Absolutely not.

Tr. at 91-93.

Plaintiff Taylor testified that Ms. Kowansky knew of one of the BP contracts and he also testified that he had sent a proposed amendment of Plaintiffs' contract with Defendant to Ms. Kowansky in June 2008 and he believed that the parties were operating under this new proposed amendment. Tr. at 39. However, Ms. Kowansky testified that while she did receive an e-mail from Plaintiff Taylor on June 2, 2008 regarding modifying the 2005 Agreement, she did not verbally agree to a modification, she did not respond to the e-mail, and Plaintiffs never followed up to confirm the discussions about modifying the agreement. *Id*. at 88. Ms. Kowansky stated that she would never make a verbal agreement when a written contract was already in place for a consultant. *Id.*

While the testimony of the parties is contradictory, the objective evidence shows that the parties operated under the 2005 Agreement during 2008, the time in which Plaintiffs entered into the direct agreements with BP. The specific language of this Agreement provided that Plaintiffs could not work in any capacity with Defendant's clients during the term of the agreement and for one year following termination of the contractor's services without the written permission of Defendant. Defendant's Exhibit A. No written permission from Defendant allowing Plaintiffs to work directly

20

with BP exists in the record.  And while Plaintiff Taylor testified about an alleged agreement to modify the 2005 Agreement to the terms of his June 2008 proposed modification e-mail, this fact, even if true, does not negate that Plaintiffs had already entered into a direct contract with BP well before the June 2008 proposed amendment.

Accordingly, the evidence establishes that Plaintiffs entered into direct contracts with BP in violation of the 2005 Agreement with Defendant.  The evidence further establishes that Plaintiffs failed to disclose the facts regarding the direct contracts with BP when renegotiating the 2005 Agreement and they sought to modify the agreement to include their ability to work directly for BP when they had already entered into at least one of the direct agreements with BP.  *Compare* Defendant's Exhibit J. (June 2, 2008 e-mail to Ms. Kowansky from Plaintiff Taylor and attached proposed contract) and Defendant's Exhibit E (direct contract between Plaintiffs and BP signed by Plaintiff Taylor on February 29, 2008 for term January 1, 2008 through June 30, 2008 and extension of this contract June 30, 2008 through December 31, 2009).  The facts surrounding this direct contract were material to the renegotiation of Plaintiffs' contract with Defendant and they had a duty to disclose these facts since both the 2005 and 2009 Agreements contained conflict of interest provisions indicating that a contractor could not work with other parties if it conflicted with Defendant's interests and could not work in any capacity with Defendant's clients during the term of the contract.  Defendant's Exhibits A and B.

Both agreements also contained the one-year noncompete clauses and they contained confidentiality clauses which provided that a contractor would not disclose or use any trade secrets, inventions, innovations, processes, information, records and specifications owned or licensed by Defendant or its clients in any manner except as in the course of his business with Defendant without Defendant's written permission.  See Defendant's Exhibits A and B.  Plaintiffs sought to induce

21

Defendant's reliance by their non-disclosure, considering the facts that both Agreements contained the confidentiality, conflict of interest, noncompete and written permission provisions and Plaintiffs sought in June of 2008 to modify the 2005 Agreement so as to work directly with BP, even though they had already signed one of the direct contracts with BP to do so. *See* Tr. at 28-31. Plaintiffs never informed Defendant of their direct contracts with BP. *Id*. at 33-36. Moreover, Plaintiff Taylor e-mailed Ms. Kowansky on December 15, 2008 and informed her that Plaintiffs had no plans "to seek out any other BP work." Defendant's Exhibit O. He also acknowledges in a December 13, 2008 e-mail to Ms. Kowansky that Defendant could allow Plaintiffs to work directly with BP "as per the contract," which evidences Plaintiffs' knowledge that they needed permission from Defendant and did not have it. Defendant's Exhibit N. Defendant's reliance upon Plaintiffs' nondisclosure was reasonable, considering the fact that Ms. Kowansky testified that she did not know of Plaintiffs' direct contracts with BP until right before the depositions in the instant lawsuit. While it is disputed as to whether she knew of Plaintiffs' latter direct contract with BP, Plaintiffs do not dispute that she lacked knowledge of Plaintiffs' first contract with BP.

For these reasons, Defendant appears to have a meritorious defense to Plaintiffs' breach of contract claim. Accordingly, it is unlikely that Plaintiffs have a strong likelihood of succeeding on the merits of their breach of contract claim against Defendant since that claim is based upon the 2009 Agreement. *See Leisure Resort Tech., Inc. v. Trading Cove Assocs*., 277 Conn. 21, 30, 889 A.2d 785 (Conn. 2006)(two remedies available to party who has been fraudulently induced into entering contract are rescission of the underlying contract and restitution, or affirmance of the contract and recovery of damages caused by the fraud). Further, even if the 2005 Agreement were still in effect, it did not require any "for cause" reasons for its termination and contained the same one-year noncompete clause which Plaintiffs would have violated since they resigned in December 2008 and

entered into the two direct contracts with BP during their contract with Defendant.

### b. **BREACH OF THE 2009 AGREEMENT**

Should the Court find that the fraudulent inducement defense fails or should the Court determine that the 2009 Agreement is the controlling agreement, the undersigned recommends that the Court find that Plaintiffs still lack a strong likelihood of succeeding on the merits of establishing their breach of contract claim. The elements of a breach of contract claim under Connecticut law are: " 'the formation of an agreement, performance by one party, breach of the agreement by the other party and damages.' " *Tatum v. Oberg*, 650 F.Supp.2d 185, 192 (D.Conn. 2009), citing *Rosato v. Mascardo*, 82 Conn.App. 396, 411, 844 A.2d 893 (Conn.App.Ct. 2004)(quoting *Bouchard v. Sundberg*, 80 Conn.App. 180, 189, 834 A.2d 744 (Conn.App.Ct.2003). The elements of a breach of contract claim under Ohio law are: "1) the existence of a binding contract; 2) the non-breaching party performed its contractual obligations; 3) a breach in contractual obligations by the other party; and 4) the non-breaching party suffered damages as a result of the breach." *Holmes v. Wilson*, No. 2:08-cv-602, 2009 WL 3673015, at *3 (S.D. Ohio Oct. 30, 2009), citing *Wauseon Plaza Ltd. P'ship v. Wauseon Hardware Co.*, 156 Ohio App.3d 575, 582, 807 N.E.2d 953 (Ohio Ct. App. 2004), *Garofalo v. Chicago Title Ins. Co.*, 104 Ohio App.3d 95, 107, 661 N.E.2d 218 (Ohio Ct.App. 1995).

Here, should the Court find that the 2009 Agreement controls, neither party disputes the creation or existence of that contract. Thus, Plaintiffs can establish the first element for their breach of contract claim. The parties thereafter dispute Plaintiffs' performance under the 2009 Agreement and Defendant's breach of the agreement by terminating Plaintiffs' contract. ECF Dkt. #6 at 4 ("Plaintiffs' conduct, including, but not limited to, the conduct outlined in the December 11, 2009 letter and outlined above does not justify "for cause" termination under the Agreement. Defendant's actions in terminating the Agreement, including, but not limited to, the conduct outlined above

constitutes a breach of contract."); ECF Dkt. #10 at 5 ("Further, Plaintiffs abided by the terms of the Agreement and have not engaged in any conduct that constitutes 'for cause' termination, as defined in the Agreement...Further, Defendant has breached the agreement by wrongfully terminating the Agreement and seeking to enforce the non-compete even though Plaintiffs did not engage in conduct justifying 'for cause' termination."); ECF Dkt. #13 at 7 ("Plaintiffs also cannot establish that they are likely to prevail on their claim that GELRAD breached the parties' agreement by terminating its relationship with plaintiffs without 'cause.'").

The undersigned recommends that the Court find that Plaintiffs cannot establish that they performed as required under the contract or that Defendant breached the contract because it lacked "for cause" reasons to terminate the 2009 Agreement as required by its terms. In the December 11, 2009 letter sent by Defendant to Plaintiffs, Defendant explained that it was terminating the 2009 Agreement pursuant to paragraph 3(v), (vi), (vii) and (vii) of the Agreement. ECF Dkt. #10-4 at 1. Defendant identified numerous actions that Plaintiffs took that constituted "for cause" reasons for terminating the 2009 Agreement with Plaintiffs, including:

1) filing a lawsuit against GELRAD in Ohio state court;

2) attempting to divert business opportunities away from GELRAD for your own benefit;

3) repeatedly stating your intention to avoid your obligations under the Agreement;

4) stating your intention to compete directly with GELRAD in violation of the terms of the Agreement;

5) repeatedly failing to identify yourself while on GELRAD business as a GELRAD independent contractor in an effort to divert business opportunities away from GELRAD;

6) ongoing actions designed to undermine GELRAD's relationship with its customer;

24

> 7) assisting in the arrangement of consulting services directly with our customer for an independent contractor that had been working for GELRAD

> 8) failing to inform GELRAD of your attempts to arrange consulting services for a GELRAD independent contractor;

> 9) threatening to breach your Agreement and

> 10) other similar acts that GELRAD has determined are contrary to its interests.

ECF Dkt. #10-4 at 1. Section 3 of the 2009 Agreement is entitled "Conflict of Interest" and indicates that

> The Contractor [Plaintiff Taylor Associates] and Dr. Taylor will not work in any capacity with the Company's [Defendant] clients during the term of this Agreement and for one (1) year after termination of services provided by the Contractor without written permission of the Company. The Company may only terminate the Contractor "for cause." In the event the Company terminates the Contractor without cause, restrictions as to the one-year waiting period shall not apply.

Defendant's Exhibit B. This paragraph of the 2009 Agreement provided nine bases defining the reasons constituting "for cause" for termination. *Id.* Defendant cited the following "for cause" reasons from paragraph 3 of the 2009 Agreement in its December 11, 2009 termination letter to Plaintiffs, a number of which the undersigned recommends that the Court find meritorious:

> (v) material breach of Contractor's obligations under this Agreement;

> (vi) intentional engagement in any competitive activity which would constitute a breach of Contractor's duty of loyalty or obligations under this Agreement;

> (vii) the continued failure by Contractor to substantially perform Contractor's duties to the Company; and

> (viii) willful conduct by Contractor that is demonstrably and materially injurious to the Company, monetarily or otherwise.

*Id.* If *any* of Plaintiffs' purported actions as outlined by Defendant in the December 11, 2009 letter met the "for cause" reasons identified in the 2009 Agreement, then it is likely that Plaintiffs would not substantially prevail on their breach of contract claim against Defendant.

Recognizing that the 2005 and 2009 Agreements in this case were for independent contractor status, the undersigned nevertheless finds that Ohio law and Connecticut law relating to just cause provisions in an employer-employee context are still helpful. Ohio law provides that an employee may not be terminated under the just cause provision of an employment contract unless he engages in an affirmative act of misconduct. *See Zimmerman v. Eagle Mortgage Corp.*, 110 Ohio App.3d 762, 675 N.E.2d 480, 487 (1996). The acts of the employee must be "akin to conduct that necessarily injures the place of employment." *Id.* Where an employee is accused of such conduct yet denies the allegations, an employer is required to determine just cause with good faith and on the basis of substantial evidence. *See Chrvala v. Borden, Inc.*, 14 F.Supp.2d 1013, 1017 (S.D.Ohio 1998). *See also Hills v. Cleveland Found.*, 1987 WL14184 *5 (Ohio Ct.App. July 9, 1987). Connecticut law provides that while a contract for employment with a just cause provision concerning the employee's termination substantially limits a manager's discretion, the provision "simply means that 'employers are forbid[den] to act arbitrarily or capriciously'" in terminating the employee. *Gaudio v. Griffin Health Services, Corp.*, 249 Conn. 523, 733 A.2d 197, 208 (1999), quoting *Sheets v. Teddy's Frosted Foods, Inc.*, 179 Conn. 471, 475, 427 A.2d 385 (1980). "In other words, an employer who wishes to terminate an employee for cause must do nothing more rigorous than 'proffer a proper reason for dismissal.'" *Id*. The Connecticut courts have reasoned that "'courts should not lightly intervene to impair the exercise of managerial discretion....'" in employment relationships. *Gaudio*, 733 A.2d at 208, quoting *Faulkner v. United Technologies Corp.*, 240 Conn. 576, 693 A.2d 293, 299 (1997).

The undersigned rejects Defendant's assertion that the after-acquired evidence doctrine completely bars relief for Plaintiffs' claims against Defendant. The after-acquired evidence doctrine limits a plaintiff's ability to recover damages resulting from a defendant's improper termination of an employment relationship when an employer discovers evidence of prior employee misconduct after the employee's actual or constructive discharge, if that misconduct is "of such severity that the

employee would have been terminated on those grounds alone if the employer had known of it at the time of discharge." *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 360-63, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995). Both Ohio and Connecticut have applied *McKennon* as a limit on remedies that an employee can seek, not as a bar to an employer's liability. *See Warner v. Pipeline Development Co.*, No. 1:06CV2719, 2008 WL 928453, at *13 (N.D. Ohio Apr. 4, 2008), unpublished (denial of employer's motion for summary judgment to bar all of employee's claims on basis of after-acquired evidence doctrine as doctrine acts in equity to limit remedies of plaintiff, not to absolve defendant of liability); *Ortiz v. Prudential Ins.* Co., 94 F.Supp.2d 225, 229 fn. 2, citing *McKennon*, 513 U.S. at 362-363 ("after-acquired evidence does not serve as a bar to liability, only to limit damages."); *Blake-McIntosh v. Cadbury Beverages, Inc.*, No. 3:96-CV-2554(EBB), 1999 WL 643661, at *16-17 (D. Conn. Aug. 10, 1999), unpublished (after-acquired evidence doctrine does not bar employment discrimination claim but may bar the seeking of reinstatement, and front pay, as well as a limit on back pay from the date that termination occurred and the date that the after-acquired evidence was discovered).

The undersigned also rejects Plaintiffs' assertion that since Plaintiffs resigned on December 3, 2008, they had no relationship with Defendant again until the resigning of the 2009 Agreement, except to comply with the noncompete covenant which would have expired in December 2009, one year from their December 2008 resignation date. ECF Dkt. #15 at 11. Plaintiffs reason that the only actions that Defendant could have considered in determining reasons to terminate the 2009 Agreement "for cause" are Plaintiffs' actions occurring after the signing of the 2009 Agreement. Plaintiffs assert that any alleged misconduct they committed either did not constitute "for cause" termination under the 2009 Agreement or occurred prior to the 2009 Agreement. *Id.*

However, Plaintiffs entered into direct contracts with BP that continued into the effective date of the 2009 Agreement with Defendant. Even if, as Plaintiff Taylor stated at the hearing, Plaintiffs

had not yet provided services under their 2008 direct contracts with BP, the actions of executing contracts to directly provide services that would continue into the year of the effective date of the 2009 Agreement, without Defendant's knowledge, could still be interpreted under the "for cause" provision of 2009 Agreement as an intentional engagement in competitive activity that would constitute a breach of loyalty to Defendant and/or actions that are demonstrably and materially injurious to Defendant. Further, Plaintiffs continued under a contractual relationship with Defendant, and objective evidence, that is, the 2009 Agreement, demonstrates that the contractual relationship with BP would have been objectionable. These are both "for cause" reasons for terminating Plaintiffs' contract with Defendant. Further, Plaintiffs' lawsuit against Defendant which followed their requests to terminate the 2009 Agreement and to work directly with BP could also constitute a breach of loyalty and actions that are demonstrably and materially injurious to Defendant as outlined as "for cause" reasons in the 2009 Agreement. Accordingly, the undersigned recommends that the Court find that Plaintiffs have not shown a strong likelihood of prevailing on their breach of contract claims against Defendant as Defendant has presented substantial evidence of cause under the 2009 Agreement in order to terminate Plaintiffs' contract.

### **3**.     **TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIP**

Plaintiffs also allege that Defendant tortiously interfered with their business relationship with BP by informing BP that Defendant planned to enforce the non-compete provision of the contract between Plaintiffs and Defendant and asked that BP not hire Plaintiffs because of that provision. ECF Dkt. #10 at 6-7. The undersigned recommends that the Court find that Plaintiffs have not presented a strong likelihood of succeeding on this claim.

As discussed *supra*, it is uncertain as to which state's law applies since many states are potentially involved in this claim and the parties fail to explain their application of Ohio and/or Connecticut law. Accordingly, the undersigned will apply the general elements of a tortious

interference of business relationship claim as provided in Section 766B of the Restatement (Second)

of Torts ("Section 766B")[5].  Section 766B provides that:

> One who intentionally and improperly interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

Restatement (Second) of Torts § 766B.  The Restatement further provides factors to consider in

 determining whether a party has improperly acted in intentionally interfering with a contract or

business relationship:

> (a) the nature of the actor's conduct, (b) the actor's motive, (c) the interests of the other with which the actor's conduct interferes, (d) the interests sought to be advanced by the actor, (e) the social interests in protecting the freedom of action of the actor and the contractual interests of the other, (f) the proximity or remoteness of the actor's conduct to the interference, and (g) the relations between the parties.

4 Restatement of the Law 2d,  Torts (1979), 26-27, § 767 ("§ 767").

Plaintiffs in this case assert that because they did not engage in conduct justifying "for cause"

---

[5]  The Ohio Supreme Court adopted the Restatement analysis for tortious interference claims.  *Pasqualetti v. Kia Motors America, Inc.*, 663 F.Supp.2d 586, 601 (N.D. Ohio 2009), citing *Kenty v. Transamerica Premium Ins.*, 72 Ohio St.3d 415, 419, 650 N.E.2d 863 (1995).  In order to establish the elements of a tortious interference with contract or a business relationship under Ohio law, Plaintiffs must show: (1) a business relationship or contract; (2) defendant's knowledge thereof; (3) defendant's intentional action to prevent the formation of the contract, to procure a contract breach or to terminate a business relationship; (4) a lack of privilege or a justification for the actions; and (5) resulting damages.  *MP TotalCare Services, Inc. v. Mattimoe*, 648 F.Supp.2d 956, 967-968 (N.D. Ohio 2009), citing *Parker v. Rice*, No. L-08-1168, 2009 WL 223886, at *3, 2009-Ohio-388 (Ohio 6 Dist. App.Ct. Jan. 30, 2009) and *Brookside Ambulance, Inc. v. Walker Ambulance Serv.*, 112 Ohio App.3d 150, 156-57, 678 N.E.2d 248 (1996).  Only improper interference with a contract or business relationship is actionable.  *Fred Siegel Co., L.P.A. v. Arter & Hadden*, 85 Ohio St.3d 171, 176, 707 N.E.2d 853 (1999)

Connecticut law is similar, holding that the essential elements of a tortious interference with a contract or business relationship are: "the existence of a contractual or beneficial relationship and that the defendant(s), knowing of that relationship, intentionally sought to interfere with it; and, as a result, the plaintiff claimed to have suffered actual loss."  *Indiaweekly.com, L.L.C. v. Nehaflix.com, Inc.*, 596 F.Supp.2d 497, 505 (D.Conn. 2009), quoting *Solomon v. Aberman*, 196 Conn. 359, 365, 493 A.2d 193 (Conn. 1985)(internal quotations and citations omitted).  Connecticut law also requires improper motive or means on the part of the interfering party beyond the interference itself and relies upon the factors of §767 in order to determine if the specific interference was improper.  *Modis, Inc. v. Bardelli*, 531 F.Supp.2d 314, 322 (D.Conn. 2008), citing *Blake v. Levy*, 191 Conn. 257, 262, 464 A.2d 52 (1983).

termination of the 2009 Agreement, Defendant is tortiously interfering with their business relationship with BP by attempting to enforce a non-compete provision of that Agreement that does not apply due to the lack of "for cause" reasons for the termination. ECF Dkt. #10 at 6-7. However, since the undersigned has recommended that the Court find that Defendant did have "for cause" reasons in which to terminate the 2009 Agreement, Plaintiffs' assertion here would be without merit. Moreover, Plaintiffs have not shown that Defendant knew of any direct business relationship or contract between Plaintiffs and BP since Plaintiffs' 2005 and 2009 Agreements with Defendant both contained provisions barring direct work with clients of Defendant without Defendant's written permission and Plaintiff Taylor testified that he did not tell Defendant of at least one of the BP direct contracts until his deposition conducted for this lawsuit. Defendant's Exhibit B. Accordingly, the Court should find that Plaintiffs have not shown a strong likelihood of success on their claims of tortious interference with contract or business relations.

### 4. WRONGFUL DISCHARGE

Plaintiffs also allege that Defendant wrongfully discharged them and terminated their agreement in violation of public policy because Plaintiffs filed a lawsuit against Defendant for a declaratory judgment regarding the enforceability of the non-compete covenant. ECF Dkt. #6 at 4. The undersigned recommends that the Court find that Plaintiffs cannot show a substantial likelihood of prevailing on this claim.

Ohio law provides that only an at-will employee may bring a wrongful discharge in violation of public policy claim. *Klepsy v. United Parcel Service, Inc*., 489 F.3d 264, 271 (6th Cir. 2007), citing *Haynes v. Zoological Soc. of Cincinnati*, 73 Ohio St.3d 254, 652 N.E.2d 948 (1995). Connecticut law provides the same. *See Wilhelm v. Sunrise Northeast, Inc*., 923 F.Supp. 330, 336 (D.Conn. 1995). Consequently, since Plaintiffs are independent contractors, the Court should find that Plaintiffs have not shown a likelihood of prevailing on the merits of a wrongful discharge claim.

## 5.    NON-COMPETE COVENANTS

Plaintiffs also challenge the reasonableness of the one-year covenant not to compete that would be enforced upon termination of either the 2005 or the 2009 Agreement.  Plaintiffs correctly point out that both Connecticut and Ohio law provide that a non-compete covenant will be enforced only if it is reasonable.  The Sixth Circuit Court of Appeals set forth the Ohio standard in *Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d 985, 991-992 (6th Cir. 2007)(footnotes omitted):

> Under Ohio law, "[i]n determining the validity of a covenant or agreement in restraint of trade, each case must be decided on its own facts.... A covenant restraining an employee from competing with his former employer upon termination of employment is reasonable if it is [1.] no greater than is required for the protection of the employer, [2.] does not impose undue hardship on the employee, and [3.] is not injurious to the public. Courts are empowered to modify or amend employment agreements to achieve such [reasonable] results." FN2 *Raimonde v. Van Vlerah*, 42 Ohio St.2d 21, 325 N.E.2d 544, 547 (1975). The party seeking to enforce the covenant "is required to adduce clear and convincing evidence as to each of these factors" in order to prove that the covenant is reasonable.FN3 *Levine v. Beckman*, 48 Ohio App.3d 24, 548 N.E.2d 267, 270 (1988). " `Clear and convincing evidence is that measure or degree of proof which is more than a mere `preponderance of the evidence,' but not to the extent of such certainty as is required `beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *Estate of Schmidt v. Derenia*, 158 Ohio App.3d 738, 822 N.E.2d 401, 405 (2004) (quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118, 119 (1954)).
>
> Additional considerations that courts should assess in reviewing the reasonableness of a covenant include:
>
> whether the covenant imposes temporal and spatial limitations, whether the employee had contact with customers, whether the employee possesses confidential information or trade secrets, whether the covenant bars only unfair competition, whether the covenant stifles the employee's inherent skill and experience, whether the benefit to the employer is disproportionate to the employee's detriment, whether the covenant destroys the employee's sole means of support, whether the employee's talent was developed during the employment, and whether the forbidden employment is merely incidental to the main employment.

*Basicomputer Corp. v. Scott*, 973 F.2d 507, 512 (6th Cir.1992) (quoting *Raimonde*, 325 N.E.2d at 547).  Connecticut law provides that non-compete covenants "are enforceable only if their imposed restraint is reasonable." *Deming v. Nationwide Mut. Ins. Co. ,* 279 Conn. 745, 761, 905 A.2d 623

31

(2006). "In assessing whether a non-compete covenant is reasonable, the court must consider: "(1) the employer's need to protect legitimate business interests, such as trade secrets and customer lists; (2) the employee's need to earn a living; and (3) the public's need to secure the employee's presence in the labor pool." *Saye v. Old Hill Partners, Inc.*, 478 F.Supp.2d 248, 267 (D.Conn. 2007). In making such an evaluation, Connecticut courts consider the following factors:

> 1) the length of time the restriction is to be in effect; (2) the geographical area covered by the restriction; (3) the degree of protection afforded to the interest of the party in whose favor the covenant is made; (4) the restrictions imposed on the employee's ability to pursue his occupation; and (5) the potential for undue interference with the interests of the public.

*New Haven Tobacco Co. v. Perrelli*, 11 Conn.App. 636, 638-39, 528 A.2d 865 (1987).

Based on both Connecticut and Ohio law, the Court should find that a one-year non-compete provision is reasonable in this case. Here, Defendant developed and cultivated a business relationship with BP in a competitive industry at considerable expense with considerable energy. Tr. at 79-82. Indeed, it was Defendant that brought Plaintiffs to BP. *Id*. at 6-7. BP apparently liked Plaintiffs' work and trusted their opinions, since BP was Plaintiffs' primary and nearly only client through Defendant for a number of years. *Id*. at 6-8. Further, given Plaintiff Taylor's ability to cultivate his relationship with BP through Defendant so well and so quickly and to be given increasing roles with BP, it appears reasonable for Defendant to restrict Plaintiffs from working for BP, Defendant's client, for only one year after Plaintiffs left Defendant. *See Magnuson,* 487 F.3d at 992. Moreover, Plaintiffs' experience and background lends itself to many opportunities in the field and Plaintiffs have not shown to the contrary or that the inability to work directly with Defendant's clients for a period of one year will destroy their ability to work in their chosen field.

## B.     IRREPARABLE INJURY

Having addressed the likelihood of the success on the merits of Plaintiffs' claims, the undersigned will address the remaining prongs should the Court find that Plaintiffs have presented

a substantial likelihood of prevailing on the merits of any of their claims.

Plaintiffs assert that they will continue to be irreparably harmed by Defendant's breach of contract and enforcement of non-compete provision because Plaintiffs perform unique work and have lost work with BP and cannot develop business with BP due to the breach of contract and enforcement of the non-compete provision. ECF Dkt. #10 at 11.

In order to establish irreparable injury, a party must show that the injury is both substantial and irreparable. *Economu v. Physicians Weight Loss Centers*, 756 F.Supp. 1024, 1038 (N.D. Ohio 1991). A party must establish both irreparable harm and the inadequacy of legal remedies. *Id.* (citations omitted).

> The key word in this consideration is *irreparable*. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief will be available at the later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.

*Id.*, quoting *Sampson v. Murray*, 415 U.S. 61, 94 S.Ct. 937, 39 L.E.2d 166 (1974), quoting *Virginia Petroleum Jobbers Assn. v. FPF*, 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (D.C.Cir. 1958)(emphasis in original).

The undersigned recommends that the Court find that Plaintiffs have not shown the requisite irreparable injury. The Sixth Circuit has held that "[t]he loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute. Similarly, the loss of fair competition that results from the breach of a non-competition covenant is likely to irreparably harm an ***employer***." *Scott*, 973 F.2d at 512(citations omitted)(emphasis added); *see also RMS-Services USA, Inc. v. Houston*, No. 06-15585, 2007 WL 1344449 (E.D. Mich. May 4, 2007), unpublished ("courts have routinely held that the loss of a competitive advantage results in irreparable harm.")(citations omitted).

Here, the loss of "goodwill" that Plaintiffs complain will be lost was originally gained by Plaintiffs only through Defendant. Plaintiffs never worked with BP before becoming independent contractors of Defendant. Tr. at 25. Further, Plaintiffs' assertion of the loss of time, energy and money are not the types of injuries covered under irreparable injury for the issuance of a preliminary injunction. *See Sampson*, 415 U.S. 61. Moreover, Plaintiffs are not barred from working with other companies like Defendant or working directly with clients other than those of Defendant, for the period of one year. Plaintiff Taylor, a tenured professor at two colleges and a professional engineer, testified that he has been providing process improvement consulting services since 1976 and has performed Six Sigma consulting since 1984. Tr. at 5, 52. He stated that he has served as a consultant in more than twenty-five countries around the world. *Id.* at 52. Plaintiff Taylor further testified that he is a master black belt in Six Sigma consulting with several Masters' and Bachelors' Degrees, and he has a Ph.D in statistics. *Id.* He further agreed that his background and experience distinguish him from the other Six Sigma consultants. *Id*. at 53. Plaintiffs have not shown that they are unable to provide consulting work to companies other than BP or that Plaintiffs are unable to obtain a position with other Six Sigma companies like Defendant. While Plaintiffs allege the loss of relationships that they built with BP, this is also not the type of irreparable injury required for a preliminary injunction. *See Montgomery v. Carr*, 848 F.Supp. 770 (S.D. Ohio 1993)("[t]he loss of working relationships is not an irreparable injury even though it is distressing...since [plaintiff] has succeeded in the past in building effective working relationships...and since there is no indication in the record that [she]-an experienced and successful professional educator-will be hampered in any way from doing so..."). In addition, Plaintiffs entered into both the 2005 and 2009 Agreements with knowledge that they could not directly work for Defendant's clients during the term of employment or one year after termination of the contract without written permission from Defendant.

For these reasons, the undersigned recommends that the Court find that this factor does not weigh in Plaintiffs' favor.

### C.    SUBSTANTIAL HARM TO OTHERS

The undersigned recommends that the Court find that this factor weighs in favor of denying the injunction to Plaintiffs because of the potential of substantial harm to Defendant if it is granted. The undersigned believes that Defendant will lose goodwill with BP if the restrictive covenant is not enforced since Defendant developed and cultivated the relationship and brought Plaintiffs and BP together at its time and expense. At the hearing, Ms. Kowansky testified as to the efforts made by Defendant to develop and cultivate a business relationship with BP, explaining the numerous measures undertaken to develop and enhance the relationship. Tr. at 79-82. Ms. Kowansky noted that the Six Sigma consulting industry is competitive and BP is a "prized client." *Id*. at 81-82. Allowing Plaintiffs, who have developed a great knowledge of BP through Defendant and at Defendant's expense, to work directly with BP would negatively impact Defendant's business with BP and the efforts undertaken to cultivate its business relationship.

### D.    PUBLIC INTEREST

This factor also weighs in favor of not granting the injunction for Plaintiffs. The undersigned acknowledges the public interest in allowing Plaintiffs to pursue their chosen trade. However, Plaintiffs will not be deprived of every opportunity to engage in their field, since the covenant is for only one year and limited only to those clients of Defendant. Moreover, the public interest is better served by holding parties to the written conditions of a contract where all parties understood those conditions. This promotes stability in the business world and in the employment context.

### VI.    CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court DENY Plaintiffs'

motion for a preliminary injunction.  ECF Dkt. #10.


Dated: May 14, 2010                                     _____/s/George J. Limbert_____
                                                        GEORGE J. LIMBERT
                                                        U.S. MAGISTRATE JUDGE


        ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of
Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to
file objections within the specified time WAIVES the right to appeal the Magistrate Judge's
recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947
(6th Cir. 1981).